**UNITED DAIRIES, INC., Plaintiff,**

v.

**Orville L. FREEMAN, Secretary of Agriculture of the United States, Defendant.**

**Civ. A. 66-C-80.**

United States District Court
D. Colorado.
June 5, 1967.

Philip A. Rouse, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., by William E. Gandy, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This is an action brought under 7 U.S.C. § 608c(15) (B) to review a ruling made by a judicial officer acting as and for the Secretary of Agriculture pursuant to delegated authority; the ruling was adverse to plaintiff. By counterclaim defendant seeks a mandatory injunction commanding plaintiff to comply with the provisions of the marketing order.

In 1959 a group of dairy farmers organized Producers United, Inc., a Colorado corporation, to distribute milk in their neighborhoods. Plaintiff is a Colorado corporation organized for the purpose of retailing and wholesaling milk in the Denver area. Plaintiff participated in the formation of Producers United, Inc., and owned a 49 per cent interest. Plaintiff processed and bottled the milk furnished by Producers and returned it to them for distribution to customers on routes. The organizers of Producers subscribed for such amounts of stock as they desired to acquire at $50.00 per share; they executed a stock subscription, assignment and note which provided for monthly installment payments. These payments were to be made out of sums due from plaintiff for milk sold to it. Plaintiff honored the assignments by paying the assigned amounts to Producers United.

The marketing order with which we are concerned was made effective by the Secretary in November 1961. The Cache Valley Dairy Association, a cooperative composed of Utah milk producers, through a subsidiary, Dairy Fresh Foods, Inc., acquired control of plaintiff in November 1961. It began to seek out new milk producers, but before those producers were permitted to ship milk to plaintiff, each was required to purchase stock; for each share of stock he was entitled to ship 100 pounds of milk. Plaintiff had acquired contracts to supply milk to Fort Carson, Ent Air Force Base and the Air Force Academy and,

therefore, needed additional producers to supply its milk needs. Plaintiff had asked the original stockholders of Producers to increase their production, but they did not do so in any substantial amount and additional producers were consequently sought. Plaintiff is a "handler" regulated under the order. On December 30, 1963, the market administrator ruled that certain deductions made under the monthly assignments paid by plaintiff to Producers United were not proper deductions under the marketing order and must be refunded to Producers.

■■ Since the scope of our review is limited to a determination as to whether the findings of the judicial officer are "in accordance with law", we are not free to evaluate the evidence de novo and rule in accordance with our own view of the case. Wawa Dairy Farms, Inc. v. Wickard, 149 F.2d 860 (C.A. 3, 1945). We might note, however, that it is rather likely that we would have reached a conclusion different from that of the judicial officer. Nevertheless, the findings of the judicial officer are adequately supported by the record and cannot be characterized as being clearly erroneous or not in accordance with the law.

Following are some of the factors which we believe tend to support the administrative ruling. Plaintiff effectively controlled the operation of Producers United both before and after November 1961. It was on or about the date of the marketing order that the ownership of plaintiff corporation changed hands and that Producers United, Inc., began to require all incoming producers to purchase a stock interest in the corporation based on the amount of milk which they produced and sold to plaintiff. If a producer were to increase the amount of milk produced, he was required to purchase additional stock in relation to the amount of the production increase. There was sufficient evidence to support the finding that a substantial portion of the "stock payments" thus channeled in to Producers United, Inc., was expended for items which inured only to the benefit of plaintiff and *not* to the producers.

The evidence is also consistent with the finding that those producers who purchased shares in Producers United were buying a "base" or right to have an outlet for their product rather than a meaningful partial ownership of a going corporation. (The obvious continual financial loss incurred by Producers United makes it highly unlikely that after November 1961 any producer would have considered his stock purchase a sound or beneficial financial investment.)

Plaintiff contends the marketing order cannot be enforced because it requires refunds of amounts paid for stock prior to the effective date of the order. The facts disclose otherwise; the amounts demanded to be refunded are for deductions made between November 1961 (date of the order) through January 1964.

Plaintiff's argument that payments by the producers to Producers United constituted proper "assignments" rather than "deductions" proscribed by the marketing order is unconvincing. The judicial officer properly found that irrespective of the form of the payments, the effect was still that the producers were receiving an amount for their products which was below the minimum prescribed by the order of November 1, 1961. The consent of the producers does not vitiate the impropriety of the deductions. Although such an assignment is a contract, nevertheless it is subject to the provisions of the marketing order. See C. J. Wieland & Son Dairy Products Company, Inc. v. Wickard, 68 F.Supp. 93 (E.D.Wis.1946). In the present case the "assignments" are merely the vehicles used to effectuate the deductions.

Another contention of plaintiff is that the marketing administrator approved the stock purchase plan of the producers. The record which we reviewed discloses no such approval; it does not appear that the stock purchase plan was even submitted to him for his approval or

disapproval. Even if he had approved it, his act would not be binding on the Secretary. Dairymen's League Cooperative Ass'n v. Brannan, 173 F.2d 57 (C.A. 2, 1949); Goodman v. Benson, 286 F.2d 896 (C.A. 7, 1961).

We conclude that there is ample evidence to support the findings of the Secretary and there was no error of law in the order as issued.

■ Counter-claims are authorized for the purpose of enforcing provisions of the Act and Orders made pursuant thereto. Crull v. Wickard, 40 F.Supp. 606 (D.C.W.D.Ky.1941). Defendant is entitled to a mandatory injunction directing plaintiff to make payment to producers of the amounts the judicial officer found due and owing under the Marketing Order.

Defendant will prepare and submit an appropriate judgment within ten days.